## JANUARY TERM, 1910.

CASE 19.—ACTION BY J. P. LAVIN AGAINST THE CHESA-
PEAKE & OHIO RAILROAD COMPANY FOR LOSS
OF A BOX OF MERCHANDISE—January 6.—1910.

### Chesapeake & Ohio Ry. Co. v. Lavin

Appeal from Floyd Circuit Court.

D. W. GARDNER, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1.   Carriers—Delivery of Goods to Consignee—Authority to For-
ward from "Destination.".—The "destination" of goods is the
place of delivery, and a carrier has no right, without author-
ity from consignee, to deliver them to another for him; but
if it is the custom for the carrier to forward goods by boat
from their destination on its line, and the consignee knew this
when he ordered the goods shipped, and the owner of a boat
has previously received goods for him from the carrier and
delivered them, the carrier is authorized to deliver the goods
to such owner for transportation by boat to the consignee.
2.   Carriers—Damage to Goods——Crediting Proceeds of Sale.—
In allowing damages to a consignee of goods, the carrier
should be credited with the amount realized from a sale of
the goods for the benefit of the consignee's creditors.

WALTER S. HARKINS, WORTHINGTON, COCHRAN &
BROWNING, F. T. D. WALLACE and JOSEPH D. HARKINS for
appellant.

MAY & MAY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment for $643.65, re-
covered by appellee against appellant in the court
below upon a claim for damages of that amount on ac-

count of the alleged conversion, or destruction, by the appellant or its agents, of a box of merchandise which had been shipped over its railroad to appellee from Knoxville, Tenn. The box of merchandise, consisting of men's and boys' clothing, was purchased by appellee of Claiborne, Tate & Cowan, of Knoxville, and shipped to him from that city over a line of railroad under the control of the Louisville & Nashville Railroad Company, to Winchester, Kentucky, and from that city over appellant's line of railroad to the village of Whitehouse, the point of destination.

Appellee was a country merchant, his residence and store at that time being at Dwale, a post office situated in Floyd county, upon the Big Sandy river, about 30 miles from Whitehouse. There is no railroad from Whitehouse to Dwale, and, the public roads between those points being mountainous and practically impassable for wagons, the only way of transporting merchandise or other freight from one of these points to the other is by the boats running on the Big Sandy river; both small steamboats and "pushboats" being used for that purpose. The pushboat is a flat boat operated by poles in the hands of experienced boatmen. The Big Sandy river is a swift, though rather shallow, mountain stream, subject to sudden rise and fall. Much of the time its depth is not sufficient for the running of steamboats, but is always sufficient for the operation of pushboats. It often happens, however, that a sudden rise in the river will stop the running of pushboats up stream as in such case the unusual force of the current resulting from the increase in the volume of water becomes too great for the boats to be propelled against it by pushing. When the push boats are caught by these rises, they make a

landing and tie up till the river runs down to such a stage as will enable them to proceed; but, if while one of the pushboats is tied up, a steamboat passes going to the same point of destination, it is the custom for the freight of the pushboat to be transferred to the steamboat for further transportation and delivery to the consignee, by which arrangement, without additional cost, a quicker delivery of such freight would result than would be accomplished by the pushboat.

It appears from the record, and is conceded by the parties that Whitehouse was the place where appellant, as common carrier, was to deliver, and that appellee was to receive, the box of goods in question, and after reaching Whitehouse the goods had to be transported to appellee's store at Dwale, by boat. It is appellee's contention, and such was his testimony on the trial, that appellant's only duty was to safely carry the goods to Whitehouse, and there deliver them to him, or upon his written order to whomsoever he might constitute his agent to receive them; that appellant did not deliver the goods to him or to another upon his order or hold them until he could go or send for them, but, instead, delivered the goods, without his knowledge or consent to one G. Wells, to be transported by his pushboat to appellee's store at Dwale; and that Wells, or a steamboat to which he transferred the goods, suffered them to fall into the Big Sandy river and remain in the water for several hours, thereby so injuring the goods as to render them unsaleable and utterly worthless. Appellee also contends, and to this effect he likewise testified on the trial, that he owned a pushboat which he in his own business operated upon the Big Sandy river, and by means of

which it was his purpose to transport the goods in question from Whitehouse to his store at Dwale, and that Wells had never transported goods for him by boat or otherwise, and had never been authorized by him to do so.

Appellant, by answer, supported by the testimony of its Whitehouse station agent, and Wells, interposed the defense: That Wells, who operates for hire pushboats on Big Sandy river, was engaged as a common carrier in transporting merchandise and other freight from Whitehouse to Dwale and other points up the river; that Wells had on two or three previous occasions carried upon his boats goods from Whitehouse to Dwale for appellee; and that it was the custom of merchants and others residing at Dwale and other places up the Big Sandy river to employ Wells and other boatmen to receive for them at Whitehouse and transport to them upon pushboats to points up the river, merchandise and other freight shipped over appellant's railroad and consigned to them at Whitehouse, which custom had prevailed among merchants and others on Big Sandy river above Whitehouse for 15 or 20 years. Appellant's testimony further tends to prove:

That the box of clothing shipped to appellee, after reaching Whitehouse, remained in its freight depot eight days, and, though appellee had due notice of the time of its arrival at Whitehouse, he failed to call for it in person or send his boat for it; that at that time there were as many as 200 merchants and others residing and doing business upon and contiguous to Big Sandy river whose goods and freight were shipped to and received at Whitehouse and from there carried by steam or pushboats to the consignees; that, in order to accommodate these merchants

and shippers and prevent a congestion of freight at its Whitehouse station, it was indispensably necessary for appellant to follow the custom of delivering to boatmen goods and freight to be carried up the river by both steam and pushboats; that, after holding appellee's box of goods eight days, appellant's agent, in pursuance of the custom referred to, and because of the previous taking by Wells of goods for appellee, turned the box of goods over to Wells at his solicitation and took his receipt therefor, upon his undertaking as a common carrier to transport them by boat to Dwale and there deliver them to appellee; that Wells thereupon placed the box of goods with other freight upon his pushboat and started with it to Dwale; but that while proceeding on the way there came such a freshet or rise in the waters of the Big Sandy river that Wells was forced to land and tie up the boat, and while waiting the subsidence of the high water a small steamboat known as the ''Sea Gull,'' with a lighter in tow, came along, and in pursuance of the well-known custom obtaining among the boatmen on the river and their patrons, and in order to insure a safer and quicker delivery to appellee of the box of goods, Wells made an arrangement with the Captain of the Sea Gull to take the box of goods and deliver them to appellee at Dwale. The box was then transferred to the lighter attached to the Sea Gull, and soon thereafter, in a collision between the Sea Gull and the Dr. York, another steamboat plying the river, the lighter was capsized, and appellee's box of goods thrown into the river, where it remained about three hours, and was then recovered by the crew of the Sea Gull and soon thereafter delivered at appellee's store at Dwale.

Upon the foregoing facts the jury returned a verdict in favor of appellee for the amount claimed in the petition. Appellant complains that the jury were not properly instructed, and that this error of the court entitled it to a new trial.

As Whitehouse was the destination of the box of goods shipped appellee, that was the place of delivery, and appellant had no right without authority, express or implied, from appellee, to deliver them to another person for him. If, however, it was the custom for appellant to forward goods consigned to Whitehouse to appellee, by boat passing on the river, and appellee knew this when he ordered the goods shipped, and Wells was one of the persons who had previously received goods for him from appellant at Whitehouse and delivered to him at his store, appellant was, in that event, authorized to deliver the goods to Wells for transportation by boat to appellee at Dwale.

The instructions given by the trial court do not sufficiently conform to this view of the law, and in the form given they were prejudicial to the substantial rights of appellant. Upon a retrial of the case the jury should be instructed as follows:

No. 1. The court instructs the jury that if they believe from the evidence plaintiff bought from Claiborne, Tate & Cowan the box of clothing mentioned in the petition and the same was shipped and consigned to plaintiff at Whitehouse, Ky., and that the defendant received same for shipment and delivery to the plaintiff at Whitehouse, Ky., and further believe from the evidence that defendant after receiving said box of clothing failed to deliver it to the plaintiff at Whitehouse or there delivered it to another person without authority, express or implied, as set out in

instruction No: 2, from plaintiff so to do, they should find for plaintiff the value of the box of clothing as set out in the petition, to-wit, $643.65.

No. 2.  If, however, the jury should believe from the evidence it was the custom for the defendant to forward goods consigned to Whitehouse to plaintiff by boat passing on the river to Dwale, and plaintiff knew this, when he ordered the goods shipped, or if they believed from the evidence that there had been previous deliveries from the defendant to Green Wells,  for  transportation  by  his  line  of boats  to  Dwale,  goods  consigned  to  White-house  to  plaintiff,  and  plaintiff  had  received the  same  from  Wells  without  objection  to  de-fendant of their being delivered to Wells for him, they should, in either of these events, find for the defendant; provided they further believe from the evidence that the goods were delivered to Wells at Whithouse by the defendant as previous consignments had been delivered for transportation by boat to plaintiff.

It is insisted in the brief of counsel for appellant that the box of clothing was not rendered wholly un-saleable by their falling in the river, and that the clothing was in fact sold for the benefit of appellee's creditors in a proceeding growing out of his insolven-cy, at which sale they brought nearly $400.  No proof of such sale of the goods is furnished by the record. If, upon another trial of the case, it should be shown by proof that the goods were thus disposed of the jury should be instructed that, if they find that ap-pellee is entitled to recover as claimed in the peti-tion, appellant should in that event be allowed by them credit for the amount realized for the goods at such sale.

As no objection was made by appellant in the court below, and none is now urged, as to the right of appellee to proceed against it by cross-petition in an action brought against him by Claiborne, Tate & Cowan, for the value of the goods in controversy, we have deemed it improper to consider or pass upon that matter.

For the reasons given, the judgment is reversed, and cause remanded for a new trial consistent with the opinion.